UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20081-ALTONAGA
CASE NO. 25-CR-20333-ALTONAGA

UNITED STATES OF AMERICA

v.

MARK SIMON,

    **Defendant.**

_____ /

THE GOVERNMENT'S SENTENCING MEMORANDUM

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its undersigned attorney, hereby represents that it has reviewed the United States Probation Officer's presentence report (hereinafter "PSR") and addendum and concurs with the United States Sentencing Guidelines ("U.S.S.G.") calculations set forth in the defendant's PSR and asks the Court to impose a sentence within the low-end of the established guidelines range.

BACKGROUND

Case No. 25-CR-20081

On February 25, 2025, a grand jury in the Southern District of Florida returned an indictment charging the defendant with Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956. ECF No. 3. The defendant was arrested on March 12, 2025, and made his initial appearance before the magistrate judge for the referenced indictment in the Southern District

1

of New York and was released on a $50,000 personal surety bond. PSR ¶ 16. On August 1, 2025, pursuant to a written plea agreement, the defendant pled guilty as charged. ECF No. 40; PSR ¶ 1.

Case No. 25-CR-20333

On July 18, 2025, an information was filed charging the defendant with one count of Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956, in the Northern District of Texas, and transferred to the Southern District of Florida by Federal Rules of Criminal Procedure 20, on July 30, 2025. PSR ¶ 22. On August 1, 2025, the defendant was arraigned and shortly thereafter pled guilty to the sole count in the Information pursuant to a consolidated plea agreement with Case No. 25-CR-20081. ECF Nos. 7, 8.

    A.    Offense of Conviction

Case No. 25-CR-20081

As set forth in the statement of facts and the PSR, the defendant's conviction stems from his participation in a money laundering conspiracy involving stolen jewelry. Between September 2019 through on or about August 4, 2021, the defendant, an owner of a jewelry store in New York conspired with members of a South American Theft Group (SATG) to launder jewelry stolen during robberies, thefts, and a burglary. PSR ¶ 24. The members of the SATG targeted traveling jewelry salespersons and jewelry stores, stealing assorted jewelry, cash, and other goods. *Id*. The members of the SATG then sold the stolen jewelry to fences – individuals who purchase illegally obtained goods, and using various money laundering methods, convert those goods into cash proceeds. PSR ¶ 26. The defendant was one of the fences used by the members of the SATG.

To purchase the jewelry, the defendant primarily traveled from New York to the Miami, Florida area, to meet with the members of the SATG in a hotel room that was often rented by a co-conspirator using fraudulent identification to conceal the identity of the co-conspirators and the

2

nature of the transactions. PSR ¶ 27. The defendant purchased the stolen jewelry below market value and, in exchange for the stolen jewelry, paid members of the SATG cash. *Id*. The defendant returned to New York with the stolen jewelry and, using a fake or fraudulent name as the recipient, mailed any remaining cash payments to the members of the SATG to further conceal the nature and circumstances of the transactions. *Id*. The defendant further concealed the transactions by melting the stolen gold jewelry to remove any identifying information, such as serial numbers, and to make the jewelry unrecognizable. *Id*. The defendant laundered jewelry stolen from one vehicular burglary and three robberies, totaling over $2 million. PSR ¶¶ 28-60, 69. Additionally, he attempted to purchase and launder jewelry stolen during a March 6, 2020 jewelry store burglary in Dalton, Georgia, but the conspirators could not agree on a price. PSR ¶¶ 61-65. The defendant continued to communicate with a member of the SATG and inquire about stolen jewelry until at least July 2021. PSR ¶ 68.

Case No. 25-CR-20333

In March 2023, and continuing through June 2023, the defendant conspired to launder jewelry stolen during a robbery on April 18, 2023, in Farmers Branch, Texas. PSR ¶¶ 78, 85. The defendant's co-conspirators robbed a diamond broker, who was carrying a backpack containing diamonds, cash, an iPhone, and passport. PSR ¶ 85. After stealing the backpack, the co-conspirators traveled to Houston and contacted the defendant about purchasing the stolen diamonds. PSR ¶ 87. On or about April 27, 2023, the defendant traveled from New York to Houston to purchase the stolen diamonds. PSR ¶ 88. The defendant met the co-conspirators at a hotel in Houston where he weighed and analyzed the diamonds. PSR ¶ 89. After negotiating and reaching an agreed price for the diamonds, the defendant made an upfront cash payment to the co-conspirators. *Id*. Less than a week later, the defendant paid the remaining balance in person before

returning to New York. *Id*. Like his prior money laundering activities, the defendant purchased the jewelry below market value to obtain a profit once he resold the diamonds. PSR ¶ 90. To conceal that the diamonds were stolen, no documentation or certifications were exchanged. *Id*. The stolen diamonds were valued at $184,623.00. *See* Addendum to PSR, p. 46.

Prior to the April 18, 2023 robbery, the co-conspirators attempted to sell the defendant diamonds stolen during another robbery involving two traveling jewelry salesmen. PSR ¶¶ 82-84. However, the defendant declined to purchase the diamonds because they were lab grown rather than natural diamonds. PSR ¶ 84.

B.     The Defendant's Background

The defendant is 57 years old. He was born in White Plains, New York, and is one of two children born to his parents. PSR ¶ 124. He reported being raised in the "country" in Putnam Valley, New York, and experiencing a very good childhood with access to a freshwater lake where he often went boating and fishing. PSR ¶ 127. Although the defendant reported that he does not possess any specialized training, skill, or professional licensure, he is college educated with a bachelor's degree in business from Pace University in White Plains. PSR ¶¶ 152, 154. The defendant is reportedly married but separated and shares two adult children with his estranged spouse. PSR ¶ 128. For the past ten years, he has been in a long-term relationship and shares two minor children with his partner. PSR ¶¶ 130, 131.

The defendant has been in the jewelry business for approximately 33 years. PSR ¶ 157. Since 2015, he has owned Anthony's Jewelers, in Yorktown Heights, as a sole proprietor. *Id*. He reported earning approximately $70,000 a year and has monthly expenses of almost $10,000. PSR ¶¶ 157, 171. Unfortunately, the United States Probation Office was unable to analyze the defendant's finances due to his unwillingness or inability to disclose his monthly income. PSR ¶¶

157, 172. The defendant did note that his income significantly varies and that his legal issues have impacted his income. PSR ¶ 157.

In addition to other sensitive information, the defendant has reported multiple physical, mental, and emotional conditions that have been omitted from discussion in this memorandum due to the sensitivity of the information. The government does not minimize or diminish the seriousness of the defendant's reported conditions but notes that most of the reported conditions predate these cases and were not a deterrent to the defendant's criminal activities. The government respectfully requests the opportunity to expound on its position at the sentencing hearing.

## POSITION ON SENTENCING AND ARGUMENT

As an initial matter, pursuant to U.S.S.G. § 3E1.1(b), the defendant is eligible for a three-level reduction to his offense level for acceptance of responsibility and his timely plea of guilty. Therefore, the government agrees with the probation office's calculation as to offense level of 25 (PSR ¶¶ 116, 174), criminal history category of I (PSR ¶¶ 119, 174), and a guidelines range of 57 to 71 months (PSR ¶¶ 155, 174).

The government recognizes that a sentencing court may not presume that a sentence within the advisory guidelines range is reasonable; nonetheless, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. The United States respectfully submits that a sentence within the low-end of the established guidelines range

is "sufficient, and not greater than necessary" to satisfy the purposes of the § 3553(a) factors. 18 U.S.C. § 3553(a).

*First*, the nature and circumstances of the offenses are extremely serious. For a span of approximately four years, the defendant laundered stolen jewelry and diamonds. Using the knowledge he gained from over 30 years in the jewelry industry, the defendant was able to exploit the weaknesses of the industry and conceal his criminal activities. For selfish gain and not a perceived necessity, the defendant conspired with individuals who committed violent offenses to obtain the stolen jewelry and diamonds. The defendant time after time disregarded the impact of his actions and continued to engage in money laundering activities. The defendant's actions sowed seeds of mistrust in the jewelry industry, an industry in which he has been a member for three decades. Due to his ownership of a jewelry business, the defendant stood in a unique position to understand the devastation a robbery or theft could cause a jewelry salesperson or store owner but still chose to engage in his criminal conduct. Fences like the defendant create a market for individuals to sell stolen jewelry, i.e., jewelry thieves would not be able to sell and profit from the stolen property without fences, and incentivize their commission of robberies and thefts.

*Second,* as noted above, the defendant does not have a criminal history. However, based upon the facts and circumstances in these cases, the defendant engaged in the fencing of stolen jewelry and diamonds for an extended period of time. Although members of the SATG were arrested, the defendant continued fencing activities with other individuals, indicating that his reputation for purchasing stolen jewelry and diamonds preceded him.

*Third*, the Court should consider general and specific deterrence. "In determining the particular sentence to be imposed, a sentencing court is required to consider, among other factors, the need for the sentence imposed to protect the public from further crimes of the defendant, and

to afford adequate deterrence to criminal conduct." *United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) (internal quotations omitted). These sentencing factors cover both specific and general deterrence. *Id*. (citing *United States v. Irey*, 612 F.3d 1160, 1210-13 (11th Cir. 2010)). On the issue of general deterrence, the public must have confidence that the defendant's criminal activities are treated with the utmost seriousness. The public must know and understand that there is zero tolerance for individuals who continue to criminally profit from the victimization of business owners and employees. As to specific deterrence, the defendant should be held accountable for his actions and his critical role in the conspiracy. Without fences like the defendant, jewelry thieves would not have a market to sell the stolen jewelry. Therefore, the Court should impose a sentence that sends the defendant a strong message (specific deterrence) that his conduct in this case as a fence and exploitation of the jewelry industry to satiate his greed has caught up with him while simultaneously telling others in the community (general deterrence) that the federal criminal justice system will not tolerate those who ignore the rule of law.

## CONCLUSION

Therefore, the government respectfully asks the Court to impose a sentence within the low-end of the established guidelines range (57 to 60 months).

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:  /s/Lakeita F. Rox-Love
Lakeita F. Rox-Love
Trial Attorney
Violent Crime and Racketeering Section
Department of Justice, Criminal Division
Attorney #A5502655
1301 New York Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 307-3345
Lakeita.Rox-Love@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record.

s/Lakeita F. Rox-Love
Lakeita F. Rox-Love
Trial Attorney